ARISOHN LLC

JOSHUA D. ARISOHN
ARISOHN LLC
94 BLAKESLEE ROAD
LITCHFIELD, CT 06759
TEL: (917) 656-0569
josh@arisohnllc.com

JOSHUA D. ARISOHN
ARISOHN LLC
513 EIGHTH AVENUE, #2
BROOKLYN, NY 11215
TEL: (917) 656-0569
josh@arisohnllc.com

April 10, 2025

**VIA ECF**
Hon. John P. Cronan
United States District Court
Southern District of New York
500 Pearl Street, Room 1320
New York, NY 10007

**Re: *Cai v. DataCamp, Inc.*, No. 1:25-cv-00954 (S.D.N.Y.)**

Dear Judge Cronan:

I write on behalf of Plaintiff Henggao Cai ("Plaintiff") Pursuant to Rule 6.A of the Court's Individual Practices in Civil Cases, and in response to the letter filed by Defendant DataCamp, Inc. ("Defendant" or "DataCamp") on April 10, 2025 (ECF No. 12) ("PML").

Plaintiff has used Defendant's website, datacamp.com, to take video courses on various data and AI-related topics. Compl. (ECF No. 1) ¶ 5. Unbeknownst to him, however, and without his consent, "Defendant was sharing Plaintiff's video watching activity and his [personally identifiable information ('PII')] with Facebook and other third parties through its use of the Facebook Tracking Pixel and similar technologies." *Id.* "Indeed, data from Plaintiff's Facebook account confirms that Defendant disclosed such data to Facebook over 100 times." *Id.* In doing so, Defendant violated the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.* ("VPPA"). Defendant now seeks leave to file a motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) for lack of Article III standing and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[1] For the reasons set out below, both arguments will fail.

## I. Plaintiff Has Article III Standing

Defendant argues that Plaintiff lacks Article III standing to bring his claim under the VPPA because his LinkedIn profile lists some of the certificates that he earned from DataCamp. PML at 2. Plaintiff has taken 65 different courses on datacamp.com, each with several separate video lectures. His LinkedIn profile, on the other hand, under "Licenses & certifications," lists just six credentials from DataCamp, all from over seven years ago, **none** of which include the "Python and Machine Learning" course that Plaintiff specifically names in the Complaint or the dozens of other videos that he has watched on datacamp.com. Compl. ¶ 5. Accordingly, at the very least, Plaintiff has Article III standing to bring claims for the video courses not disclosed on his LinkedIn page.

---

[1] Defendant suggests 30 days for Plaintiff's response to the motion to dismiss. Plaintiff needs only seven.

But even for the videos related to those six certificates, Plaintiff has standing. As the heading on LinkedIn makes clear, Plaintiff merely disclosed *certificates* that he received from DataCamp. Unlike the Facebook Tracking Pixel, the postings do not make any reference to the titles, topics or URLs of specific videos lectures within those courses. In other words, the certificates do not constitute "specific video materials" that Plaintiff "requested or obtained" from Defendant. 18 U.S.C. § 2710(a)(3). On this point, *Crane v. Am. Bar Ass'n*, 663 F. Supp. 3d 747, 751 (E.D. Mich. 2023), is distinguishable. There, standing was lacking because the plaintiff had publicly disclosed that he was an ABA member on his website and, accordingly, he had "already published all of the information he says would cause him injury if disclosed." *Id.* at 751. Here, however, Plaintiff alleges that Defendant violated the VPPA because it provided Meta with a far more granular data set about the specific videos that he watched. *Murray v. Nat'l Ass'n of Realtors*, 2023 WL 7726173, at *6 (E.D. Mich. Nov. 15, 2023) (distinguishing *Crane* because the alleged disclosure was different in kind from what was already published).

In addition, Plaintiff's decision to post some of his certificates from DataCamp did not give Defendant free license to surreptitiously share his specific video-viewing information and PII with third parties. It is firmly established that the privacy interests protected by the VPPA give rise to Article III standing. *See, e.g.*, *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 544 (2d Cir. 2024). Those privacy interests do not disappear when a consumer chooses to fill out his resume on LinkedIn. Indeed, "an individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." *United States Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 500 (1994). That is because "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *United States Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989).

Finally, Defendant argues that Article III standing is lacking because "Plaintiff consented to and granted DataCamp an irrevocable, worldwide license to use and publicize his 'User Content,' including content in his DataCamp 'profile or postings,' when he signed up for a DataCamp account and agreed to DataCamp's Terms of Use and Privacy Policy." PML at 2. But the VPPA has very specific requirements for consent, including that it be procured "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer . . . ." 18 U.S.C. § 2710(b)(2)(B)(i). Any supposed consent obtained through DataCamp's Terms of Use and Privacy Policy are thus insufficient. Because consent under the VPPA is lacking, it cannot defeat Article III standing. *Pileggi v. Washington Newspaper Publ'g Co., LLC*, 2024 WL 324121, at *8 (D.D.C. Jan. 29, 2024) (rejecting argument that a website's privacy policy resulted in implied consent and therefore a lack of standing); *Hughes v. Nat'l Football League*, No. 1:22-CV-10743 (JLR), 2024 WL 4063740, at *5 (S.D.N.Y. Sept. 5, 2024) (same).

## II. Plaintiff States A Claim Under The VPPA

Defendant argues that it is not a "video tape service provider," but merely an "online learning platform." PML at 3. Of course, the two are not mutually exclusive. The VPPA defines a "video tape service provider" in pertinent part as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710. The Second Circuit has made clear that this definition "is broad,"

and "is not limited to entities that deal exclusively in audiovisual content; rather, audiovisual content need only be *part* of the provider's book of business." *Salazar*, 118 F.4th at 548 (original emphasis). "Congress cast a wide net in defining 'video tape service provider,' to ensure that businesses dealing in audiovisual goods or services satisfy the definition even if they *also* deal in non-audiovisual goods or services." *Id.* (original emphasis). Here, Plaintiff alleges that "DataCamp is an online learning platform that teaches data and AI skills through online video courses." Compl. ¶ 21. That is sufficient. And Defendant's reliance on *Osheske v. Silver Cinemas Acquisition Co.*, 2024 WL 5487091, at *3 (9th Cir. Mar. 27, 2025) is unavailing, PML at 3; datacamp.com is not a "publicly accessible site" because it requires a subscription, Compl. ¶ 21, and its videos are not provided in a format with "shared synchronous viewing."

Defendant also argues that Plaintiff is not a "consumer" under the VPPA because it is not a "video tape service provider." PML at 3. Accordingly, this argument fails for the same reasons as those set out in the preceding paragraph. In addition, it makes no difference whether Plaintiff subscribed to DataCamp as a "video viewer" or as a "learner" to attend online courses, even if those two descriptions had some meaningful difference. *Salazar*, 118 F.4th at 550 (subscriber to email newsletter was a "consumer" under the VPPA).

Next, Defendant argues that "Plaintiff fails to allege any disclosure of his "personally identifiable information," as he cannot identify any "specific video materials" allegedly accessed or transmitted." PML at 3. That is incorrect. The VPPA defines the term "personally identifiable information" to mean "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." Here, Plaintiff alleges that Facebook Tracking Pixel shares PageView data with Meta, "which includes the URL for each video page." Compl. ¶ 6. Those URLs "describe the contents of the videos that they link to." *Id.* ¶ 24. For instance, a video course entitled "Introduction to SQL" has the URL https://campus.datacamp.com/courses/**introduction-to-sql**/relational-databases?ex=1. *Id.* The first video in that course is called "Relational Database," which is also expressly referenced in the URL. That is more than sufficient. *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 161 (S.D.N.Y. 2023) ("[A]s the case law above overwhelmingly holds, . . . "a complaint need not allege the disclosure of specific video titles; rather, the disclosure together of the user's Facebook IDs and the URLs of the videos the user accessed suffices.").

Finally, Defendant argues that Plaintiff fails to allege that Defendant disclosed his "watching activity" or that it did so knowingly. PML at 3. That is incorrect. By disclosing the URLs of the videos that he "requested or obtained," Defendant disclosed his PII to Meta and other companies. Plaintiff also expressly alleges that "Defendant was sharing Plaintiff's video watching activity and his PII with Facebook and other third parties through its use of the Facebook Tracking Pixel and similar technologies." Compl. ¶ 5. In support of that allegation, Plaintiff even provides a screenshot of his data from Facebook showing that it received over 100 events from datacamp.com. Defendant made these disclosures "knowingly" because "it knowingly installed the Facebook Tracking Pixel and other pixels and cookies on the Website." *Id.* ¶ 46.

For all of these reasons, the Court should deny Defendant's contemplated motion to dismiss.

Very truly yours,

Joshua D. Arisohn